**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

SUE SPENCER,

        Plaintiff,

vs.                                  No.  CV 00-1774 JP/LFG

JOSEPH A. SOMMER; and SOMMER, FOX,
UDALL, OTHMER, HARDWICK & WISE, P.A.,

        Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

On November 20, 2001 Defendants Joseph A. Sommer and Sommer, Fox, Udall, Othmer, Hardwick and Wise, P.A. filed a Motion for Summary Judgment (Doc. No. 19).  On March 18, 2002 Plaintiff filed a Motion to File a Supplemental Response to Defendants' Motion for Summary Judgment (Doc. No. 29).  On April 25, 2001 Defendants filed a Notice of Filing of Supplemental Information in Support of Motion for Summary Judgment.  On June 25, 2002 Plaintiff filed a Motion to Strike Filing of Supplemental Information or, in the Alternative, Motion for Leave to File Supplemental Response to Defendants' Motion for Summary Judgment (Doc. No. 35).  On July 19, 2002 I held a hearing on the pending motions at which counsel for the parties were given the opportunity to present additional arguments.  The motion to file a supplemental response will be granted, and the motion to strike will be denied as moot.  Based on a careful review of the pleadings, the evidence of record, the arguments of counsel, and the relevant case law, I find that the motion for summary judgment is well-taken and should be granted.

**Background.**

This lawsuit was filed on December 18, 2000.  It contains state law claims for legal

malpractice, breach of fiduciary duty, and attorney deceit (a statutory provision providing treble

damages), arising out of disputes over Defendants' handling of the estate of Charles Spencer.

Jurisdiction is based upon diversity under 28 U.S.C. § 1332.  Defendants are Joseph A. Sommer

("Sommer"), who served as personal representative of the estate, and Sommer, Fox, Udall, Othmer,

Hardwick & Wise, P.A. ("Sommer Law Firm") (f/k/a Sommer, Udall & Hardwick) who served as

attorneys for the personal representative and for the estate.  The specific allegations of

wrongdoing, contained in ¶ 41 of the Complaint, suggest that Defendants diminished the value of

the estate by various actions and omissions, either by simple negligence, or because Defendants

were motivated by alleged conflicts of interest to favor their other clients, Ralph Brutsche and

companies he owned or controlled, and Bishop's Lodge, which owned property near some of the

estate assets.

Plaintiff's father, Charles Spencer ("Decedent"), died testate on June 12, 1989.  Plaintiff

and her two brothers were the heirs under the will.  Defendant Sommer was named in the will as

personal representative of the Charles Spencer estate, and he was appointed to that role by the

probate court on June 20, 1989.  Decedent's will was admitted to formal probate on July 7, 1989.

Defendant Sommer retained Defendant Sommer Law Firm to represent him in his role as personal

representative.

The estate assets consisted mainly of real estate holdings and water rights in the Santa Fe,

New Mexico area.  The estate owned four major assets.  One was a residence surrounded by 15

acres with water wells and related domestic and commercial water rights.  This was sold in March

1992.  Plaintiff alleges that this property was sold at less than fair market value because Defendants failed to clarify the water rights and failed to appraise the property in a timely fashion.

Another major asset was a tract of approximately 160 acres with commercial water rights, which surrounds the 15-acre tract on which the residence is located.  This tract was subject to a 1987 contract of sale to Brutsche at the time of Decedent's death; the contract was renegotiated in 1990 and the tract was sold to Brutsche in 1992.  In 1989 Joseph Sommer allegedly granted an access and utility easement over the 160-acre tract to Summit Properties, a company owned by Ralph Brutsche.  This was disclosed to Plaintiff within a few months after the easement was granted.  Plaintiff alleges this tract was sold at less than fair market value because of erroneous advice given by Defendants (1) about enforceability of the 1987 contract with Brutsche and (2) about adverse tax consequences potentially flowing from that contract.

The third major asset was a 27-acre tract with wells and commercial water rights located near Bishop's Lodge.  This tract was sold to the Trust for Public Lands in February 1994.  A lawsuit between the estate and Bishop's Lodge over the water rights on this property was resolved favorably to the estate in November 1990.  Plaintiff alleges that water rights were conveyed without any consideration, or without adequate consideration, and that water rights were not listed on the estate inventory and appraisal.

Finally, there was a development of some 80-90 acres in two tracts known as "800 East" and "1200 East" that Charles Spencer had sold to Ralph Brutsche under a contract made long before Charles Spencer's death.  Under the terms of the contract Brutsche was to pay $2500 per lot as the lots were sold to buyers, beginning with the 61st lot.  The estate sued Brutsche on this contract and settled that lawsuit in February 1999.  There are no specific allegations of

wrongdoing in connection with this asset.

Before beginning work as personal representative for the estate in June 1989, Defendant Sommer disclosed to Plaintiff and her brothers by letter that the Sommer Law Firm represented a client, Bishop's Lodge, with respect to certain matters, but not with respect to the water rights dispute between Decedent and Bishop's Lodge. Attorney Peter Ives had represented Mr. Spencer before his death in the water rights dispute, and Mr. Ives litigated the water rights dispute thereafter on behalf of the estate. Defendant Sommer also disclosed that the Sommer Law Firm represented another client, Ralph Brutsche, in matters unconnected with the estate, and that, should a legal dispute arise between Brutsche and the estate with regard to Brutsche's 1987 contract to buy 160 acres of land from Decedent, independent counsel would have to be employed. After these disclosures, Plaintiff expressly consented to the appointment of Defendant Sommer as personal representative of the estate.

In June 1990 Frank Spencer, one of Plaintiff's brothers, was appointed as co-personal representative of the estate. This occurred at the request of Plaintiff and her brothers, through attorney Peter Ives. In addition to representing the estate in the water rights dispute with Bishop's Lodge, attorney Ives also represented the heirs personally in a lawsuit they filed against the estate over a children's trust matter.

Defendant Sommer resigned as co-personal representative in December 1998; the Sommer Law Firm remained as the attorney for the estate until the probate case was closed, although attorney Janet McKay, who was not associated with the Sommer Law Firm, represented the estate prior to and during closing of the probate. Frank Spencer continued to serve as co-personal representative throughout the pendency of the probate case; after Defendant Sommer's resignation

he served as the sole personal representative. Because of complexities involved in settling and closing the estate, which included at least two civil lawsuits and a tax refund action against the Internal Revenue Service, the estate did not close until November 1999. On November 19, 1999 a final order was entered in the probate case closing the estate and releasing all claims against the personal representatives.

*The 160-acre tract.* The 160-acre tract was sold to Brutsche's company, Summit Properties, after the 1987 contract between Decedent and Brutsche was renegotiated. Plaintiff alleges that by granting Brutsche an easement, Defendant Sommer virtually ensured this tract would have to be sold to Brutsche. Plaintiff also alleges that Defendants gave the heirs erroneous advice about the need to sell to Brutsche to avoid tax problems, and that Defendants were motivated by their conflict of interest and desire to benefit their client Brutsche to the detriment of the estate. The contract was renegotiated in 1990, and the sale took place in 1992.

Plaintiff contends that she relied on advice of the Sommer Law Firm in consenting to the renegotiated contract, and she also describes it as "the contract negotiated by Kurt Sommer." Aff. S.Spencer, Pl. Ex. A at 8 ¶ 18. The Sommer Law Firm, as counsel for the estate, was kept apprised of the contract dispute, but it represented neither the heirs nor Brutsche in this matter. Attorney Ives represented the Plaintiff and her brothers, and Brutsche retained separate counsel to represent him. During that dispute, in an April 10, 1990 letter to counsel for Brutsche, attorney Ives stated:

> With regard to the old form of agreement that had been entered into on March 24, 1987, we have proposed putting that agreement aside because of significant questions regarding its continued viability. ... While I realize that your client's position is that the prior agreement is still effective, that position is tenuous at best. ... the agreement became null and void of its own terms. ... the Spencers do not recognize the prior agreement as being binding ....

Def. Ex. A. The letter proposed a new land sale agreement. Brutsche's attorney, however, refused to renegotiate any of the financial terms of the original contracts. On July 28, 1992 the estate formally conveyed the land to Brutsche. Plaintiff professes to deny that she participated in the negotiations through attorney Peter Ives, or that she relied on the advice of attorney Ives, but she points to no documentary evidence to refute the April 10, 1990 letter from attorney Ives in which he purports to represent "the Spencers." Regardless of which attorney renegotiated the contract on behalf of Plaintiff, the fact remains that Plaintiff knew in 1990 that there were legal questions about the validity of the 1987 contract between her father and Brutsche.

Later, between May and November 1995, Plaintiff employed attorney Earl Potter and his firm to examine the estate-Brutsche matter and the administration of the estate. Mr. Potter, through his associate Garry Friedman, personally examined the Sommer Law Firm's files regarding the estate. Plaintiff does not allege that anything was concealed from attorney Potter, and Plaintiff states that Potter advised her that the Sommer Law Firm had done nothing wrong in connection with the Brutsche transaction.

In 1997 Brutsche filed a declaratory judgment action against the estate. One of the issues involved his company's development rights to the 160-acre tract that it had purchased from the estate. The declaratory judgment action was settled, and the settlement was authorized by the probate court in March 1999. Although she was given the opportunity, Plaintiff did not object to the settlement or seek to void the sale in the context of the probate proceedings.

*The residence and 15-acre tract.* The residence and 15-acre tract were sold on April 6, 1992, including domestic water rights and a right to use all three wells located on the property.

Plaintiff consented to this sale. Plaintiff presents evidence that more favorable offers were scuttled by Defendants when they failed or refused to clarify the water rights for potential buyers, but she does not dispute that the sale occurred in 1992, and she does not assert that any of Defendants' alleged failings were concealed from her or unknown to her prior to the sale.

*The 27-acre tract.* On February 28, 1994 the estate conveyed the 27-acre tract of land to the Trust for Public Land together with water rights. Plaintiff approved this sale before it was consummated. Plaintiff contends that she relied on Defendants' advice in approving the sale of this land, and that the land was much more valuable than what it was sold for. She also contends that Defendants had a conflict of interest in connection with this land because of their representation of another client, Bishop's Lodge. Plaintiff admits that attorney Peter Ives represented her interests in a lawsuit filed by Bishop's Lodge over water rights to this property. The Sommer Law Firm did not represent Bishop's Lodge in that lawsuit, which was resolved favorably to the estate in 1990.

*Other matters.* On February 18, 1991 the estate filed its amended estate tax return with the IRS. This return listed all the assets, liabilities and anticipated expenses of the decedent. In 1993 Plaintiff consulted tax and estate attorney Patricia Tucker with respect to the administration of the estate, the tax schedules and tax matters therein, as well as the tax reporting of estate assets and expenses. Ms. Tucker met with Kurt Sommer of the Sommer Law Firm to discuss a tax deficiency assessed against the estate in 1993, and Ms. Tucker advised Plaintiff and her brothers on how to respond to the IRS regarding the deficiency. In a September 23, 1993 letter to Ms. Tucker, Plaintiff detailed questions she had about certain items in the estate tax schedules prepared by the Sommer Law Firm, and stated: "Thank you for taking our case! We all appreciate your experience

7

in these matters, and are happy to have you on our side." Def. Ex. K to Aff. K. Sommer.

In a June 7, 1992 letter, Plaintiff reported to Kurt Sommer that she had concerns regarding accounting "discrepancies" and the reporting and sale of estate water rights. By March 5, 1994 Plaintiff had retained attorney Eric Biggs to investigate water rights that Plaintiff believed were owned by the estate at the time of her father's death, and to appraise and evaluate the water rights for estate property.

On January 29, 1996 Plaintiff requested that Defendant Sommer and the Sommer Law Firm withdraw from their representation of the estate, stating that she believed that "the firm has not obtained the money it should have collected for property sold . . .." Def. Ex. D to Aff. J. Sommer. Defendants continued to represent the estate.

By February 12, 1996 Plaintiff had retained attorney Martin Threet to advise her as to certain estate matters, including the inventory of estate assets. Attorney Threet formally entered his appearance in the probate proceeding on August 11, 1997, and through the probate court proceedings he sought a full inventory of all estate transactions, together with appraisals of all property and water rights. He later withdrew as counsel of record in the probate proceeding in December 1998. By October 9, 1997 Plaintiff had hired another tax attorney, Donald Swaim, to review and analyze the estate's handling of the sale of the 27-acre site to the Trust for Public Lands and related tax reporting. Attorney Swaim reported his findings to attorney Threet in April 1998.

An emergency hearing in the probate proceedings occurred on December 9, 1998. At issue was a partial release to Brutsche of a mortgage held by the estate. In that proceeding, Plaintiff

raised many of the same conflict of interest and maladministration issues she now raises in her Complaint in this action. Plaintiff contends that at that time she did not know the factual basis for the issues now alleged in her Complaint. Plaintiff cites the October 1999 opinion letter by attorney Swaim as support for that contention, which is belied by the undisputed facts. At the July 19, 2002 hearing I gave counsel for Plaintiff an opportunity to point to any of the factual matters Swaim relied on for his October 1999 opinion letter that previously had been unknown to or concealed from Plaintiff. None was identified.

On May 3, 1999 Plaintiff filed objections to the Petition for Order of Complete Settlement in the probate case. She objected that there were assets allegedly missing from the estate, that no proper accounting had been made in the estate, and that Joseph Sommer and his agents had made errors, omissions, delays, and oversights in the administration of the estate. On July 19, 1999 at a hearing on the Petition, Plaintiff cross-examined Sommer Law Firm attorney Kurt Sommer with respect to the estate's sale of property to Brutsche, with respect to the purchase price and validity of the 1987 Brutsche-Spencer sales contract, and with respect to water rights inventory and valuation issues, among other things. At the hearing, Plaintiff requested that a special master be appointed to review the accounting of the estate, and to determine whether there were inadequacies in inventory, appraisals, accounting, and sales of assets. The court declined to grant the request for a special master. Plaintiff presented her objections and appeared at the hearing *pro se*.

On October 29, 1999 Plaintiff filed an Objection to Manner of Sales of Properties, a Notice of Unfinished Business of the Estate, and an Objection to Supplemental and Amended Inventory in the probate case. In those pleadings Plaintiff raised many of the conflict of interest and

maladministration issues she raises again in her Complaint in this case.  The hearing on the Petition resumed on November 9, 1999.  Plaintiff again appeared *pro se* and was given the opportunity to continue the cross-examination of Kurt Sommer and to present evidence in support of her objections.  She asserts that the judge would not allow her fully to cross-examine the witnesses, but she points to nothing in the transcript of the proceedings to support this assertion.

On November 18, 1999 Plaintiff filed an objection to the Order of Complete Settlement of Estate, complaining that the language in the Order was too broad and would prevent her from prosecuting claims against Joseph Sommer and the Sommer Law Firm for misadministration of the estate.  At a presentment hearing the next day, at which Plaintiff appeared *pro se*, the court heard Plaintiff's objection and entered the Order without making Plaintiff's suggested revision allowing claims against Defendants.  The Order states:  "the Personal Representatives are discharged from any claim or demand of any interested person."  Def. Ex. OO at 3.

**I.  Plaintiff's Motion to File a Supplemental Response to Defendants' Motion for Summary Judgment.**  As a preliminary matter, the Court will grant Plaintiff's Motion to File a Supplemental Response to Defendants' Motion for Summary Judgment.  Plaintiff did not comply with the local rules of this Court in filing her response to the motion for summary judgment, in that she did not specifically dispute the numbered facts in Defendants' Statement of Material Facts (SOMF).  D.N.M. LR-Civ 56.1(b).  This was pointed out in Defendants' Reply brief, in which Defendants argued that their motion for summary judgment should be granted for this reason.  Plaintiff then moved to file a supplemental response, arguing that the issues should be determined

on their merits rather than the "hyper-technical" requirements of the rules.[1] Calling it a "surreply," Defendants contend that the supplemental response contains new facts that will require them to file a "surrebuttal," causing delay.

Despite the deficiencies in Plaintiff's response, I prefer to decide the motion for summary judgment on substantive grounds, and so I have considered Plaintiff's supplemental response in connection with the motion for summary judgment. This ruling will not cause delay, because even with Plaintiff's supplemental response, Defendants' motion for summary judgment is well-taken and should be granted. Thus there is no need for Defendants to file a surrebuttal.

## II. Motion for Summary Judgment.

As grounds for their summary judgment motion, Defendants assert that the statute of limitations has run for Plaintiff's causes of action, that the claims are precluded by *res judicata* or collateral estoppel since they were determined against Plaintiff in the probate proceedings, and that Plaintiff cannot assert a legal malpractice claim against them because they were not acting as her lawyers.[2]

**A. Statute of Limitations.** The statute of limitations for legal malpractice in New Mexico is either three or four years. *Compare* Brunacini v. Kavanagh, 117 N.M. 122, 127 n.2, 869 P.2d 821, 826 n.2 (Ct. App. 1993) (four years) with Mantz v. Follingstad, 84 N.M. 473, 478-79, 595 P.2d 68, 73-74 (Ct. App. 1972) (three years). For this analysis, I will use the four-year provision,

---

[1] Unfortunately, Plaintiff again ignored the local rules by failing to attach a copy of her proposed supplemental response to her motion to file supplemental response. D.N.M. LR-Civ 15.1. It was only on June 3, 2002, some two and a half months later, that Plaintiff filed a Notice of Attachment, with her proposed supplemental response attached.

[2] A fourth ground for summary judgment asserted in Defendants' motion, that this Court lacks jurisdiction to determine this dispute by virtue of the "probate exception" to federal jurisdiction, was abandoned by counsel at the July 19, 2002 hearing.

which is more favorable to the Plaintiff.

Under New Mexico law, a malpractice claim accrues when the client discovers, or should discover, that a loss has been suffered and that the loss may have been caused by the attorney's wrongful act or omission. Sharts v. Natelson, 118 N.M. 721, 724, 885 P.2d 642, 645 (1994). This is known as the discovery rule; it requires that the client have suffered "actual injury," and it applies upon discovery of "the facts essential to the cause of action." Id.

Four years before the filing of this lawsuit was December 18, 1996. Defendants argue that Plaintiff suffered "actual injury" at the times when the individual assets of the estate were sold. All these sales occurred prior to December 18, 1996. Plaintiff makes no argument that she did not suffer actual injury at the time the estate assets were sold, or that any sales occurred within the four years prior to filing her lawsuit.

Defendants also present evidence that Plaintiff discovered or should have discovered the facts essential to her cause of action long before December 18, 1996. Plaintiff claims that she only discovered in 1999 that Defendants had given negligent legal advice as to the enforceability of the 1987 Brutsche contract and the adverse tax consequences potentially flowing to the estate from the 1987 contract, so that her claim for legal malpractice did not accrue until then.

Plaintiff also attempts to avoid the limitations bar by arguing that the continuous representation doctrine should be applied to toll the statute of limitations until Defendants withdrew as personal representative and as attorneys for the estate. Plaintiff fails on both theories.

**1. Discovery of cause of action.** Plaintiff argues that she could not have reasonably discovered her claims against Defendants until March 1999, when attorney Donald Swaim issued an opinion letter regarding the unenforceability of the 1987 contract with Brutsche and the

absence of adverse tax consequences to the estate if the 160-acre tract were not sold to Brutsche. The Swaim opinion letter is based on Swaim's "personal review of the sales contract and related documents." Pl. Ex. A-17.1 at 1. These documents were available to Plaintiff and the many other attorneys she consulted over the years. All the facts Swaim relied on, which are detailed in his opinion letter, were known to Plaintiff long before Swaim analyzed them and came to his legal conclusions. Swaim concludes that Brutsche had breached the 1987 contract. Plaintiff's attorney Ives had asserted to Brutsche's attorney in April 1990 that the 1987 contract was not binding. Plaintiff offers no evidence of concealment of any of these facts by Defendants.[3]

Plaintiff acknowledges that she consulted with other attorneys about the quality of the legal representation of the Sommer Law Firm. At least two of those lawyers communicated with the Sommer Law Firm and requested documents related to its handling of estate matters on behalf of Plaintiff. Attorney Potter examined the Brutsche transaction specifically, and attorney Tucker was a tax and estate attorney.

Plaintiff actually attempts to use her consultations with two other attorneys to bolster her argument that her claims did not accrue. She states that attorney Potter examined the records provided to him by Defendants in 1995 with respect to the Brutsche transaction, and Potter opined that there was no factual basis to assert claims against Defendants. She also states that attorney

---

[3] In her response brief, Plaintiff argues that Defendants should not be allowed to assert a limitations defense when they concealed facts from her. Pl. Resp. at 12. However, there is not a shred of evidence, or even an allegation, that any fact underlying any of her claims was concealed from Plaintiff.

At the July 19, 2002 hearing, Plaintiff's counsel cited Archer v. Griffith, 390 S.W.2d 735 (Tex. 1964), for the proposition that in a legal malpractice case there is a presumption of concealment. The case really stands for the proposition that there is a presumption of unfairness in a fee contract entered into during the existence of the attorney-client relationship, and the burden of showing the fairness of the contract is on the attorney. Id., 390 S.W.2d at 739. That is an entirely different matter. There is no presumption of concealment here, and even if there were, it would be rebutted by the undisputed facts of the case.

13

Threet, whom she hired in 1996 to advise her on all her concerns about the estate, never told her that Defendants had been negligent with respect to the Brutsche transaction. These consultations do not favor a finding that Plaintiff did not discover or should not have discovered the facts essential to her cause of action -- just the opposite.

> The key consideration under the discovery rule is the factual, not the legal, basis for the cause of action. The action accrues when the plaintiff knows or should know the relevant facts, whether or not the plaintiff also knows that these facts are enough to establish a legal cause of action. Were the rule otherwise, the discovery rule would postpone accrual in every case until the plaintiff consults an attorney.

Delta Automatic Sys., Inc. v. Bingham, 1999-NMCA-029, ¶ 29, 126 N.M. 717, 974 P.2d 117 (Ct. App. 1999). Plaintiff appears to argue for accrual only when one of the many attorneys she consulted finally wrote an opinion letter specifying a legal cause of action, despite Plaintiff's full knowledge of the relevant facts for many years. That interpretation would distort the discovery rule.

This case is replete with evidence of knowledge by Plaintiff of the facts underlying her cause of action. Plaintiff's causes of action did not fail to accrue under the discovery rule.

**2. Continuous representation rule.** Plaintiff also attempts to avoid the bar of the statute of limitations by asserting that Defendant Sommer continued to act as personal representative of the estate until December 1998, and that Defendant Sommer Law Firm continued to represent the estate (and, allegedly, its heirs, including Plaintiff) until the estate closed in February 1999. Based on these facts, Plaintiff argues for application of the continuous representation tolling doctrine in this case.

Under the continuous representation rule, a limitations period is tolled in a legal malpractice action until the representation is terminated with respect to the matters that underlie

the case.  <u>Sharts v. Natelson</u>, 118 N.M. at 726, 885 P.2d at 647.  Even though New Mexico courts have not officially adopted the continuing representation doctrine in cases of legal malpractice, neither have they rejected it out of hand.  The New Mexico Court of Appeals considered whether to apply the continuous representation rule in <u>Brunacini v. Kavanaugh</u>, but found that applying it in that case would not aid the plaintiffs.  117 N.M. at 129-30, 369 P.2d at 828-29.  In <u>Brunacini</u>, the clients argued that their legal malpractice claim had not accrued by the time they filed their answer in an action by the attorney against them for payment of legal fees.  But by the time they filed their answer, they had retained a new attorney.  When they hired the new attorney, their claim for legal malpractice accrued fully.  <u>Id.</u> at 130, 369 P.2d at 829.

Plaintiff asserts that application of the continuing representation doctrine is proper in this case because Defendants continuously represented the estate and its beneficiaries regarding the very facts that underlie her malpractice claim, because Defendants advised her that they would represent both the estate and her individual interests, because Defendants gave incorrect legal advice about the sale of estate assets, and because "the defendants either intentionally or negligently concealed the incorrect nature of their advice until it was discovered independently in March, 1999."  Pl. Resp. at 13-14.  Plaintiff further argues that the doctrine should be applied here because as a beneficiary she should be able to rely on the advice of the attorney for the estate and on the good faith of the personal representative.  Otherwise, she reasons, all beneficiaries would be required to hire separate counsel to monitor each step in the probate process and file suit during the pendency of a probate, resulting in chaos, expense and disruption to the orderly conclusion of probated estates.

The purpose of the continuous representation doctrine is to avoid unnecessarily disrupting

the attorney-client relationship.  <u>Sharts</u>, 118 N.M. at 726, 885 P.2d at 647.  A court that recently

adopted the doctrine in the State of Washington described its purpose as follows:

> The continuous representation rule avoids disruption of the attorney-client
> relationship and gives attorneys the chance to remedy mistakes before being sued.
> ...  The rule also prevents an attorney from defeating a malpractice claim by
> continuing representation until the statute of limitations has expired.  ...  Courts
> adopting the rule have found it to be 'consistent with the purpose of the statute of
> limitations, which is to prevent stale claims and enable the defendant to preserve
> evidence.... The attorney-client relationship is maintained and speculative
> malpractice litigation is avoided.'  ...  The client is not forced to end the
> relationship, though the option exists.

<u>Janicki Logging & Const. Co. v. Schwabe, Williamson & Wyatt, P.C.</u>, 37 P.3d 309, 314 (Wash.

App. 2001) (internal citations omitted).

I will assume, without deciding, that the New Mexico Supreme Court would adopt the

continuous representation rule in the proper case involving a claim of legal malpractice.[4]

Nevertheless, I conclude that application of the doctrine would not be appropriate under the facts

of this case.

Defendants officially represented the estate, not the beneficiaries.  Plaintiff's claim that

Defendants agreed to represent her individual interests rests upon her self-serving affidavit to this

effect, and is not backed up by any convincing documentary evidence such as a written contract of

representation.  At most, it is supported by this general phrase in a letter from Defendant Sommer

before he was appointed as personal representative:  "if you wish me to continue, I intend to do all

possible to protect your best interests because of the longstanding friendship with Chuck over

these past twenty-three years."  Pl. Ex. A-2 at 4.  Defendants' alleged representation of Plaintiff

---

[4]  No New Mexico case discusses application of the continuous representation rule in a breach of fiduciary duty
action against a personal representative of an estate, and Plaintiff has cited no cases from other jurisdictions adopting the
rule in a breach of fiduciary duty action.

personally is also belied by the fact that Plaintiff could and did have separate legal counsel in the probate case; one of the many attorneys she consulted, Martin Threet, actually entered his appearance for her in the probate case. Whether Defendants had an attorney-client relationship with Plaintiff may be a disputed issue of material fact on the legal malpractice claim itself, but to stretch this factual dispute (for which there is weak support) to also toll the statute of limitations seems inappropriate. *See* Luk Lamellen U. Kupplungbau GmbH v. Lerner, 560 N.Y.S.2d 787, 789 (Ct. App. 1990) (for continuous representation doctrine to apply, there must be "clear indicia of an ongoing, continuous, developing, and dependent relationship between the client and the attorney which often includes an attempt by the attorney to rectify an alleged act of malpractice").

Additionally, the record reflects that as early as September 1993 Plaintiff began consulting with a string of attorneys to advise her about various aspects of probate of the estate because she distrusted and lacked confidence in the advice of Defendants and the way they were administering it. Under these circumstances, application of the continuous representation doctrine would not be advisable. *See* Lerner, 560 N.Y.S.2d at 789 ("One of the predicates for the application of the doctrine is continuing trust and confidence in the relationship between the parties").

Therefore, the continuing representation rule should not be applied in this case to toll the statute of limitations.

This case was filed untimely and must be dismissed based on the operation of the statute of limitations.[5]

**B. Res Judicata and Collateral Estoppel.**

---

[5] This analysis has been based on the claim for legal malpractice. The parties agree that the statute of limitations analysis is no more favorable to Plaintiff on any of her other causes of action.

Defendants argue that this case is barred by the doctrine of *res judicata*, or by collateral estoppel. The elements of *res judicata* or claim preclusion are: (1) same parties or in privity; (2) same causes of action; (3) a final decision in the first suit; and (4) the first decision was on the merits. First State Bank v. Muzio, 100 N.M. 98, 100, 666 P.2d 777, 779 (1983), *overruled on other grounds*, Huntington Nat'l Bank v. Sproul, 116 N.M. 254, 861 P.2d 935 (1993). The elements of collateral estoppel are:

> (1) the parties are the same or in privity with the parties in the original action; (2) the subject matter or cause of action in the two suits are different; (3) the ultimate facts or issues were actually litigated; and (4) the issue was necessarily determined.

Medrow v. State Tax. & Rev. Dept., 1998-NMCA-173, ¶ 10, 126 N.M. 332, 968 P.2d 1195 (Ct. App. 1998).

The estate's Supplemental and Amended Inventory was filed with the probate court on March 2, 1999, and the Final Accounting and a Petition for Order of Complete Settlement was filed on April 16, 1999. Plaintiff filed objections to the petition for order of complete settlement, in which she alleged that assets were missing from the estate, that no proper accounting had been made in the estate, and that errors, omissions, delays, and oversights had been made by Defendant Sommer and his agents in the administration of the estate. The judge of the probate court held a hearing on July 19, 1999 at which Plaintiff appeared and questioned Kurt Sommer, the attorney who handled the probate for Defendant Sommer Law Firm. Plaintiff requested that the court appoint a special master to determine if there was liability in connection with the accounting and probate of the estate, which request the judge denied. Plaintiff later filed more objections in the probate proceeding, in which she accused Defendants of conflict of interest and maladministration,

and another hearing was held on November 9, 1999, at which Plaintiff was given the opportunity to continue the cross-examination of Kurt Sommer and to present evidence in support of her objections.[6]  In the Order of Complete Settlement of Estate, filed November 19, 1999, the probate court ordered:

> B.  The Estate of Charles F. Spencer, deceased being fully settled, the Personal Representatives are discharged from any claim or demand of any interested person

Def. Ex. OO at 3.

It is clear that the finality of the probate case has a *res judicata* effect to bar claims against Defendant Sommer in his capacity as the co-personal representative of the estate.  Plaintiff argues that *res judicata* does not apply because she was not a party to the probate proceedings and could not be bound by an order in the probate case.  The New Mexico Probate Code gives "interested persons" such as Plaintiff, N.M. Stat. Ann. 1978 § 45-1-201(A)(23) (1995), the status of a party by providing them with certain opportunities for participating and objecting in formal probate proceedings, and provides that interested persons can be bound by orders that bind personal representatives, *see, e.g.,* §§ 45-1-403(B)(2)(d) (1975); 45-3-105 (1975); 45-3-404 (1975); 45-3-1001 (1975).  Plaintiff formally appeared and participated as an interested person in the probate proceedings, both through counsel and *pro se*.  She raised the same issues of nonfeasance and misfeasance as form the bases for her Complaint.  The probate judge gave Plaintiff the opportunity to address her allegations in the probate context, and the judge in his final Order explicitly

---

[6]  Plaintiff purports to dispute some of these factual matters, but she raises no genuine issue of fact in her response.  She states only that she represented herself pro se in the hearings, that she has no legal training or knowledge of the law, and that she was unable to fully cross-examine the witnesses because the judge would not allow it and because she did not have full access to the documents and records of the estate.  It is immaterial that Plaintiff was not represented by counsel at the hearings, and the record belies her contention that cross-examination was unduly curtailed at the hearings.

discharged the personal representatives from any claim of any "interested person." Although Plaintiff contends that she did not have a full opportunity to develop a factual record in the probate court, she has failed to raise a genuine issue of material fact as to that contention. "An order decided by a formal [probate] proceeding usually has *res judicata* effects." In re Estate of Hayes, 1998-NMCA-136, ¶ 23, 125 N.M. 820, 965 P.2d 939 (Ct. App. 1998) (citing Vieira v. Estate of Cantu, 1997-NMCA-042, ¶ 7, 123 N.M. 342, 940 P.2d 190 (Ct. App. 1997).

Further, there is no evidence of concealment by Defendant Sommer of any factual matter now relied on by Plaintiff in her Complaint. The complete discharge of the personal representatives from any liability occurred after Plaintiff had brought up the same challenges in the probate court that she brings in this case. *See* Shaw v. First Interstate Bank of Wisconsin, 695 F.Supp. 995, 999 (W.D. Wis. 1988) ("a determination as to the appropriateness of the discharge of the Trustee has a *res judicata* effect on subsequent tort actions brought by beneficiaries or trustees against the allegedly negligent trustees provided that full disclosure is made prior to discharge").

For many of the same reasons, the Sommer Law Firm argues that it should be protected by the finality of the probate proceedings. The Sommer Law Firm is in privity with Defendant Sommer. It acted as counsel for Defendant Sommer in his role as personal representative of the estate. The attorney who did most of the work on the probate, Kurt Sommer, was questioned extensively by Plaintiff at hearings in the probate proceedings. The Sommer Law Firm, too, should be protected by the finality of those proceedings.

> The purpose of collateral estoppel is to prevent endless relitigation of the same issues under the guise of different causes of action. ... The doctrine of collateral estoppel, similar to *res judicata*, is a measure grounded upon enforcement of judicial economy and designed to bar relitigation of ultimate facts or issues actually and necessarily decided in a prior suit in which the decision is final.

Reeves v. Wimberly, 107 N.M. 231, 233, 755 P.2d 75, 77 (Ct. App. 1988). *See also,* Chaara v. Lander, 2002-NMCA-053, __ N.M. __, 45 P.3d 895 (Ct. App.), *cert. denied*, 47 P.3d 447 (2002) (applying *res judicata* to bar claim by husband against ex-wife's attorney after close of domestic relations case).

In Wisdom v. Neal, 568 F. Supp. 4 (D.N.M. 1982), the court refused to apply either *res judicata* or collateral estoppel to bar a claim for legal malpractice against attorneys for an estate. The attorneys had erroneously distributed the assets of the estate among the heirs, resulting in an underpayment to two of the heirs. The error was discovered only after the probate proceedings were final. Allowing the case to go forward would not result in litigating the issues twice because the error was not contested by the attorneys. Under those circumstances, the court found that it would be unjust to bar the legal malpractice claim in federal court, and that applying the bar would not further the purposes of the preclusion doctrines. Id. at 6-7. Here, however, all the alleged wrongdoing by the attorneys was known to Plaintiff long before the estate closed, and was brought up in the probate case. Also, the attorneys contest the merits of Plaintiff's claims. *See* Krimsky v. Lombardi, 357 N.Y.S.2d 671 (Sup. Ct. 1974), *aff'd*, 377 N.Y.S. 2d 785, 786 (1976) (dismissal of legal malpractice case on preclusion grounds upheld because plaintiffs were aware of matters alleged in complaint when probate decree was entered, and no fraud or concealment by attorneys was alleged).

Therefore the Complaint will be dismissed as barred by the preclusion doctrines.

**C. Attorney-Client Relationship.**

Plaintiff claims that Defendants breached a duty that arose out of the attorney-client relationship between the estate, its beneficiaries, and the law firm. Defendants contend that the

legal malpractice claims must be dismissed because of lack of an attorney-client relationship between them and Plaintiff.  I agree with Defendants.

In a malpractice action against an attorney, the plaintiff must first prove the existence of an attorney-client relationship.  *See, e.g.,* Resolution Trust Corp. v. Barnhart, 116 N.M. 384, 388, 862 P.2d 1243, 1247 (Ct. App. 1993).  Defendants present evidence that an attorney-client relationship existed only between the Sommer Law Firm and the co-personal representatives of the estate.  Plaintiff argues that the attorney-client relationship may be implied from the facts.  This is a correct proposition, Holland v. Lawless, 95 N.M. 490, 494, 623 P.2d 1004, 1008 (Ct. App. 1981), but Plaintiff fails to raise a genuine question of material fact to imply such a relationship here.  Instead, the long history of Plaintiff seeking legal advice from and representation by other attorneys is inconsistent with the notion that Defendants were acting as her attorneys.  In fact, attorney Peter Ives represented Plaintiff in a lawsuit filed against the estate for breach of a children's trust; the Sommer Law Firm represented the estate.  Also, attorney Martin Threet entered his appearance on Plaintiff's behalf in the ongoing probate case to challenge Defendants' handling of the estate.

For all these reasons, Defendants' Motion for Summary Judgment will be granted.

**III.  Plaintiff's Motion to Strike Filing of Supplemental Information or, in the Alternative, Motion for Leave to File Supplemental Response to Defendants' Motion for Summary Judgment.**  Defendants' Notice of Filing of Supplemental Information in Support of Motion for Summary Judgment contains numerous documents from Plaintiff's files that were provided to Defendants by Plaintiff after the Defendants filed their motion for summary judgment.  Plaintiff has moved to strike this filing, arguing that the "Notice" is not a proper filing, and that if it

is considered, she should be allowed to respond to it.  Plaintiff also revives her earlier request that

she be allowed to depose the Defendants.  The supplemental information tends to support the

granting of the motion for summary judgment, but I have not relied on the factual assertions

contained in Defendants' "Notice" or on any of the attached documents in considering whether

Defendants are entitled to summary judgment.  Therefore, Plaintiff's Motion to Strike is moot.

THEREFORE IT IS ORDERED that Defendants' Motion for Summary Judgment (Doc.

No. 19) is granted;

IT IS FURTHER ORDERED that Plaintiff's Motion to File a Supplemental Response to

Defendants' Motion for Summary Judgment (Doc. No. 29) is granted;

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike Filing of Supplemental

Information or, in the Alternative, Motion for Leave to File Supplemental Response to

Defendants' Motion for Summary Judgment (Doc. No. 35) is denied as moot.

A separate Summary Judgment will be filed contemporaneously with this Memorandum

Opinion and Order.

_____
CHIEF UNITED STATES DISTRICT JUDGE